Third argument of the day is in Appeal No. 24-1028, Lisa Johnson v. Amazon.com Yeah, it's Ms. Salas, correct? Yeah, good morning. May it please the Court. My name is Maureen Salas and I'm counsel for the Plaintiff Appellants. This appeal is limited to one issue. Does Illinois law incorporate the compensability exclusions found in the Federal Portal to Portal Act? The District Court erred in holding that it does, and it dismissed the plaintiff's claims for unpaid wages. The District Court erred because although there are times when it is appropriate to interpret state law consistent with federal law, it is not appropriate when the statutes are different. And they are different in this instance because unlike federal law, state law does not include an explicit provision accepting from compensability the preliminary work activities that employees perform prior to their principal work activities. Is that the test under Illinois statutory interpretation? The test under statutory... You know, I said I would read a sentence from the Sixth Circuit opinion that is applying Kentucky law, but the Sixth Circuit says, absent a clear indication that the General Assembly considered the revision and deliberately rejected it, we cannot conclude that the lack of Portal to Portal Act language demonstrates legislative intent to exclude its compensation limits from Kentucky's wage and hour laws. That's the flip of what you just said. So under Illinois law, what's the proper test? What you're looking at, Your Honor, is Vance. And so that, exactly what you're saying, that flips what the rule of statutory construction is under Illinois law. And of course, the court here has to look at what and predict, how is the Illinois Supreme Court going to come out on this issue? The Illinois Supreme Court's direct courts to give effect to the intent of the legislature. The intent of the legislature is... So does Kentucky, by the way. Is the plain language of the statute. So does Kentucky. I mean, this is very, very high level stuff that you're telling me. I think that the issue with Kentucky and why that doesn't apply in Illinois is when we look at the decisions from the Illinois Supreme Court. We look at the decision, for example, in Moore v. Chicago Park District. We look at the Supreme Court's decision in Laura. We look at the Supreme Court's decision in Sandifer. These law, these court decisions are all requiring us to look at the plain language of the statute. It's an unrealistic burden to require a state that is drafting its own legislation to separately look at a different federal law and then to disavow the provisions in that law. And I want to back up a little bit. The Portal to Portal Act to the Fair Labor Standards Act did not limit compensability. It didn't limit the Fair Labor Standards Act in one way. 254A, the Compensability Exclusion, is just one way the Portal to Portal Act amended and limited employer liability. The Portal to Portal Act also limited employer liability by creating a good faith defense. It required employees to show that there was a willfulness component to get a third year in the limitations period. The Portal to Portal Act changed the Fair Labor Standards Act in its head by requiring employees to file a consent form, and that is what's required for someone to be a plaintiff rather than an absent class member. None of those other provisions, the Portal to Portal Act, are read into the state law. There is no consent requirement. There is no good faith defense. There is no willfulness. There is no Compensability Exclusion for preliminary work activities. It would be radical to take a separate federal statute that limits compensation under federal law and then silently read it into the Illinois statute. It goes against the federal statute itself in Section 18, which recognizes that states may enact broader laws than state statute. It goes against the Illinois regulations. There's a robust body of law out there that's all over the district courts that says the Illinois statute is going to take direction from being formed by words like that, the Fair Labor Standards Act. And I think that you can say, okay, at that level, fine, okay, but that has to be subject, I think, to unless there's some indication in Illinois law that the Illinois legislature was not intending to draw upon federal law. And here in your brief, you point to a regulation by the Department of Labor defining hours worked. And so I think Amazon has to account for that, the hours worked definition, and it's broad that way. And what's the indication that the legislature did not intend a duly enacted regulation to resolve the question about what's compensable time here? That's, I mean, I, so I don't know that we have to, that we have to, you know, general principles of statutory construction give way, in my view, to the specific question about how does that hours worked regulation interface with their argument that the PPA has somehow, the Portal to Portal Act has somehow been incorporated, subsumed within, drawn upon, pick your word. That's the part of this I can't figure out. Well, I think there's a couple things, right, in terms of the statutory interpretation. You know, first is one issue that we were talking about, which is language should not be incorporated in a statute by silence. But moving on beyond that, and to your honor's point, yes, the Illinois and the separate Illinois regulation is evidence of the department's and of the state's refusal to not incorporate the Portal to Portal exceptions. Yeah, I mean, nobody's arguing, nobody is arguing, correct me if I'm wrong, but nobody's arguing that the Illinois legislature has wholesale incorporated the FLSA in all amendments to it. I don't think, I mean, nobody's arguing that, are they? No, I don't believe so, your honor. No, because you can't square it with the statutory scheme, because they're selective, as you lay out in your brief, they're selective incorporation. Some provisions are incorporated, others are not, that way. Yes, and so the Illinois Supreme Court in Metzger gives us guidance on that. Metzger, the Illinois Supreme Court, which again, this court must predict how is the Illinois Supreme Court going to come out. It adopts the maxim, the inclusion of one thing is the exclusion of other. There are various places in the state statute where the state statute specifically includes specific references to the federal statute. It does not include any reference to the compensability exceptions in the Portal to Portal Act. And it's really important to look at that regulation that your honor is referring to, because the General Assembly, when the statute was enacted in 1971, it gave the authority to the director of the Department of Labor to make regulations and to define terms in the act. Pursuant to that authority, the director defined the terms, hours worked broadly, as you mentioned, as all time and employees required to be on duty, on an employer's premises, or at another prescribed workplace. There is no compensability exclusion for preliminary and post-preliminary work activities in that definition. And the Illinois Supreme Court in Keene v. Walmart tells us that that regulation is entitled to deference. And unless it is unreasonable or inconsistent with the state statute, it itself has a force and effect of law. The state statute contains no exception for the Portal to Portal Act compensability exception. Neither does the state regulation at 210.110, the labor regulation. They are to be read and they are consistent with each other. The regulation is entitled to deference. I think that the district court's opinion in Wagner v. Air Method Control does a very nice job of evaluating and distinguishing how the Illinois hours worked compensability regulation is broader than what's in federal law. We have to, going back to the point where we were talking about what is the specific incorporation of certain specific terms and provisions of the federal law into the state law. The Sixth Circuit recognized in Busk that it is the legislature's job, if a statute is overbroad, to narrow it and not the judiciary's. And in fact, the Illinois General Assembly has demonstrated a record of when they determined that the statute has been overbroad, they have limited it. Specifically, when the overtime provision was amended and added to the statute in 1976. The statute did not include an overtime exemption for those white-collar employees, the administrative, executive, and professional employees. That was included in the federal law. And after the law had passed, without that exception, some legislatures found that the state statute was overbroad. It subjected employers to more liability than the federal statute. The legislature acted quickly and they promptly amended the statute, the Illinois statute, to directly pull in language from the Fair Labor Standards Act and put it directly into the statute in 4A2E, where it sits today. This example demonstrates that the legislature incorporated provisions of the federal law with specificity and with intention. That they narrowed the scope of the state statute with specificity and intention. And that if the statute's overbroad, they will take action to amend it. There's one last point that I'd like to move on to and mention about the intent of the statute. The Supreme Court of Illinois requires courts to give effect to the intent of the statute. Here, it's specifically set forth in Section 2 of the statute. The statute is meant to benefit workers, to protect the minimum wage, to increase employees' wages, to increase their purchasing power. To read into a limitation that is not in the state statute and would narrow employee wages and lessen employee wages, goes against the intent of the General Assembly. And the Supreme Court of Illinois counsels against this. Specifically, in Moore v. Chicago Park District, the court refused to read silently into the Tort Immunity Act language that would expand liability for government entities in public parks for injuries that occurred there. I would like to reserve the rest of my time for rebuttal. Okay, very well. Ms. House, let's hear from Amazon. Thank you, Your Honor. May it please the Court, Michael Connealy on behalf of Amazon. Plaintiffs ask this court to adopt a reading of the minimum wage law that contradicts a long line of cases from many courts, including this one. Over ten cases have determined- Counsel, I want to stop you on that. Are you referring to Chagoya? Chagoya is one among ten other cases. Okay. I want you to explain to me what you view as the best Seventh Circuit precedent for that proposition. Because Chagoya was a footnote, right? And it was by agreement that the parties agreed that the FLSA and the law should be read in parallel there. But where do you see the articulation of this long line? Because I don't see it. Chagoya is the most recent. There were nine prior district court cases, plus one- Okay, well, I want to talk about Seventh Circuit, not district court. Okay. So, what's- So, that's the Seventh Circuit case that applies the Portal to Portal Act to Illinois minimum wage laws. By the parties' agreement. Okay. Yes, but with an articulation of, I think, an explanation of why the courts felt comfortable doing that. It wasn't merely because of the parties' agreement. The court also points out, because the IMWL parallels the language of the FLSA- But here it doesn't, right? I think- No, it does. I'm sorry, it does. So, the preliminary, post-preliminary language is in the Illinois minimum wage law. It is not, correct? That does not appear. No, the overtime provision parallels. Okay, so you're relying on the broader overtime provision. And that is the provision that the Seventh Circuit case cited in Chagoya. The other part of that footnote cites this court's case in Ernickus-Negro. And in that case, the court also noted that the parallel language in the IMWL's overtime provision, as compared to the FLSA's overtime provision, almost word-for-word identical, was a reason why the courts in Illinois traditionally apply the same principles to overtime claims. And it's not just the Seventh Circuit federal law cases. It could take just a minute to talk about the state court authority that's on this point. Because I think it's very important here, and it distinguishes Illinois from a lot of other states where this issue has arisen. And I think it gets to some of the questions Judge Kirsch was asking about the Kentucky case in Vance v. Amazon. Illinois has said repeatedly, going back almost 40 years, that where there is silence in the Illinois minimum wage law, it is appropriate to look to federal law for guidance. Federal law is not binding, and there can be situations where Illinois law is materially different from. Right, but we've already established that the statutes are not the same. So in light of that silence, I think the Illinois Supreme Court has said that federal law is instructive, right? I agree that federal law is instructive, yes. I don't think, I certainly wasn't conceding that the statutes are not the same. I think there are also the regulations to look at, and Judge Scudder, you asked about this question. But counsel, let's just be real. The FLSA statutory language is different than the Illinois minimum wage law language. It's different statutory language. And so tell me what the examples are of cases where language from a federal statute was incorporated into a state statute by silence. Because I see some federalism concerns here, right? I don't have a specific Illinois case to cite to you, but this is very similar to the scenario in Vance involving Kentucky's minimum wage law, where there was nothing in the statute of Kentucky's laws. So you don't have any Seventh Circuit examples of importing a limitation into a state statute by silence? Other than the ones we've discussed. The court also in Mitchell v. JCG Industries used the de minimis standard, even though that's not in the Illinois minimum wage law. Did it come from Illinois law as well? That standard exists under Illinois law. Not in the statute. It is a general background principle of Illinois law, just as it is pretty much everywhere else. And the court there interpreted the Illinois minimum wage law, the statute, to incorporate that defense. So there is no rule in Illinois law, but you cannot look to federal law if Illinois law is silent on the question at hand. See, I think it's still at a level of generality higher than I think we need to be, because Illinois has this hours worked regulation. And nobody's arguing that it's like ultra-virus, it's unconstitutional, it's unconscionable. No, nothing like that. And it's broad. So isn't the question, how does the hours worked regulation inform the question about whether the Illinois statute incorporates or draws upon the federal portal of the Portal Act? Isn't that the issue? I think it's a fair summation of the issue, Your Honor. That's kind of the crux of the issue. Right. And so Ms. Salas spent her time arguing the alternative argument she advances in her brief. Her primary argument on behalf of her clients is that, look, this is muddy. The stakes are fairly high here. This issue is going to come up. God willing, we never have another global health pandemic. But how the Portal to Portal Act would apply, or if it applies under the Illinois statute, is something that will recur. So why doesn't her primary argument make a bunch of sense? Put this to the Illinois Supreme Court and give them the opportunity. Judge Maldonado's federalism point has to be all about that, or at least in part. Give them the opportunity to answer the question. They can either do it or they cannot do it. They can decline. Certainly they can. So this court's general formulation for when to certify, and this is the Jader case that we cite in our brief, looks to whether certification is particularly necessary. And there are multiple considerations. The most important consideration is whether the issue is genuinely uncertain. We don't think it is here for several reasons. This court in Chegoya applied the PPA to IMWL claims. Ten district courts have done so, and no court is on the other side. This isn't a situation where there are conflicting decisions, and so a federal court is uncertain which line is best representative of the Illinois Supreme Court. So if you go through all those cases, which I've done, it's not at all clear to me that anybody has grappled with the hours worked regulation. The general proposition that you're stating, I think, is agreed upon by both parties, that in the face of complete silence, the state statute will take direction from the federal statute. Agreed. Agreed. But my point is that the premise isn't there. There's not silence. There's a regulation. Can I give you my best answer on the regulation, then? Please. That language that looks to time on duty, on the employer's premises, or at a prescribed workplace is a federal law formulation. It comes from the Anderson case originally, but it's still in the federal regulations today. It's in 29 CFR 785.7, and it's in 29 CFR 778.223. And those regulations note that the Portal to Portal Act clarifies that language from Anderson by talking about the time when you first get to the premises, when you first get to the workplace in the day. There's a point at which, whether it's you enter the door, whether you clock in, there's a point at which you're now on the clock. And the Portal to Portal Act was meant to clarify that demarcating line. And we know that Illinois adopts at least some of those clarifications because in the hours worked regulation we've been talking about, in 210.110, it goes on to say an employee's travel performed for the employer's benefit is compensable work as defined in 29 CFR 785.33 to 785.41. And among that list of regulations, namely 785.34, is a regulation talking about the Portal to Portal Act's clarification of the demarcating line between when you start the day. So, Mr. Connealy, here's what. You might be right. But isn't, should, you might be right. But I don't know that. And isn't the best body to have a chance to answer that question the Illinois Supreme Court? And if they say, with all respect, we're going to decline the certification, then it's on us. We'll figure it out as best we can. Certainly, there are federalism concerns. The Illinois Supreme Court doesn't have to take up a question just because this court submits it. But there are other concerns in play as well, and that includes the time and expense of the litigants. And we think here, because we have Illinois appellate authority that says, if there's a silence in the statute, you can look to federal law. Because there are ten district courts and one footnote in this court that say, for the Portal to Portal Act specifically, follow federal law. And because there's also a regulation, which we haven't really discussed, 210.120, which says that the Federal Fair Labor Standards Act, as amended, regulations are fair game for guidance under Illinois law. So you have to look at that regulation in addition to the hours worked regulation. And when you put all that together, we don't see how there's any room for genuine uncertainty. If there were some uncertainty, there would at least be one decision on the other side. The only decision that Ms. Tallis cited today on Illinois minimum wage law specifically, that I think she could point to, is the Wagner decision from the District of Colorado, which is not a Portal to Portal Act case. It involves sleep time. And it's also a District of Colorado case, not a case within this circuit. So we don't think that there is a basis for certifying. Even if you disagree with me on all that, you still think there's genuine uncertainty. There's an alternative ground for affirmance here that we think the plaintiffs haven't even preserved an argument against. And that's because this case, unlike a lot of the cases that have gone to state Supreme Courts, involves COVID screening, not security screening. Security screening is obviously for the benefit of the employer because it's a loss prevention measure. COVID screening, on the other hand, especially during the time period that's issued here, was for a much broader benefit to employees themselves and to the society as a whole. And plaintiffs themselves alleged a lot of that in their Second Amendment complaint at A11 and A15 through A16. And that led the District Court to conclude at A38 that plaintiffs weren't alleging that they spent time in security screening for Amazon's benefit. It's because plaintiffs, coworkers, and society as a whole benefited. We were in the middle of the do-your-part-to-stop-the-spread part of the pandemic, and plaintiffs did not appeal. That was in relation to their Quantum Merowith claim. Plaintiffs did not appeal that holding at all, so I think we have to take it as unchallenged for purposes of this appeal. And they also did not challenge in either the District Court or until their reply brief our argument that if the Portal to Portal Act is not the rule that you apply, you apply the pre-Portal to Portal Act rule, which is limiting compensation to employees that are primarily for the employer's benefit. They did not challenge that, again, until their reply brief here. So I think when you put those two things together, they don't have a preserved argument that refutes that alternative ground for affirmance. And so you would be asking the Illinois Supreme Court to take up an issue that's really academic in this case. Well, the premise of that is that the primary benefit test is part of Illinois law. You may be more clear on that than I am. That's not clear to me. What you rely upon for that – this is all on page 31 of your brief – what you rely upon for that is a pre-PPA understanding of work. And you're actually – you're talking about the U.S. Supreme Court's decision in Anderson, et cetera. So it's not clear to me that the primary benefit test is part of Illinois law. And so the Illinois Supreme Court could certainly tell us that as well if they care to, if they want to. Well, it's not within the question that plaintiffs have proposed to certify, which is just about incorporating the Portal-to-Portal Act. But obviously the court could reformulate the question if it wants to. But my main point about Your Honor's question is that plaintiffs did not challenge that the primary benefit standard would apply under Illinois law in the absence of the Portal-to-Portal Act. We made this argument very clear at record number 22, page 16 of our brief below. And then in record number 25, plaintiffs did not respond. I mean, there's a fact question too. I mean, presumably your client was screening because it was the responsible thing to do, but also to keep the business going. They didn't want to have the warehouse full of people that were infected by COVID or tested positive or something like that. So they had a – to their credit, they had – it seems they had two reasons, commercial and just general broader safety. Yes, and so I was relying on the district court's reading of the complaint as to the quantum narrow it claim. And plaintiffs did not appeal that ruling. So I think it is fair to take it as a given for purposes of this appeal that the COVID screenings were to the benefit of employees and society as a whole, given plaintiffs' allegations in the second amended complaint. The other point I would just raise about certification, Your Honor, aside to the two we've talked about, the genuine uncertainty and the alternative ground, is that this court did not take up the certification request of the Illinois Attorney General in Mitchell v. JCG Industries over a dissent. And then no one raised concerns about certification, even the court, Suespante, in Chicoya v. City of Chicago. And this court has said, in several of its cases at least, that the opportunity to ask for certification is best exercised the first time the issue arises. This issue has been running around the district courts of this circuit and sometimes even this circuit for 20 years now. And no one has certified it. We would submit that this is the wrong case to do so. Okay. Mr. Connelly, very well. I appreciate it. Ms. Ellis, you have a couple minutes or three left on rebuttal. Thank you, Your Honors. I'd like to spend a moment addressing Amazon's alternative benefit argument. Amazon's argument improperly summarizes both state and federal law and the record evidence in the case. First, under the Illinois statute, Section 210.110, the regulation specifically, the labor regulation is what I mean, it plainly states that hours worked means all time an employee is required to be on an employer's premises. There is no benefit part and aspect to this definition. Second, defendant's argument also improperly summarizes federal law and Supreme Court precedent is dispositive on this. Work activities are still compensable even if employees benefit from them. This was the holding in IBP v. Alvarez. The Supreme Court held that the time employees spend donning and doffing safety gear is compensable under the Portal to Portal Act. It benefits employees, but it's still a compensable work activity. Similarly, in that same Supreme Court case, the court reaffirmed its precedent in Steiner v. Mitchell, which held that the time that employees spend changing clothes and washing up after they've been dealing with toxic materials during their work day is compensable under the Portal to Portal Act. Even though these work activities benefit employees, they're still compensable. Amazon also ignores the record evidence in the case. In paragraphs 46 and 54, plaintiffs allege that the COVID-19 screens primarily benefited Amazon. And in the paragraphs in between, we set forth with specificity that by controlling the required screens that occurred on Amazon's premises and under Amazon's control, Amazon assured it had a healthy workforce that was not sick, not contagious. The screens prevented a disruption in operations that would result from a mass outbreak that would then result in a loss of profit. And Amazon, of course, did maximize its profit during the pandemic. Some would even say, as we alleged in the complaint, that experienced a windfall. We're not taking the position today that federal and state law should never be interpreted the same. But they should only be interpreted the same when the statutes are the same. They should not be interpreted the same when they are different. Because Illinois law more broadly requires employers to pay employees for all time employees are required to be on the premises, it was an error for the district court to interpret the state law the same as the federal law. We ask that the court reverse the district court's decision. Ms. Ellis, thank you very much. Mr. Keneally, thanks to you as well. We appreciate it. We'll take the appeal under advisement.